IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LINDA A. VALVERDE,**

      **Plaintiff,**

v.                                                  CIV 03-556  LAM

**JOANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand For A Rehearing *(Doc. 11)*. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion *(Doc. 12)*, Defendant's response to the motion *(Doc. 13)*, and relevant law. Additionally, the Court has carefully reviewed and considered the entire administrative record (hereinafter, "*Record*" or "*R.*"). For the reasons set forth below, the Court **FINDS** that the decision of the Commissioner of Social Security (hereinafter "Commissioner") should be **AFFIRMED** and Plaintiff's motion **DENIED**.

### I.  Procedural History

Plaintiff, Linda A. Valverde, filed an application for Disability Insurance Benefits on June 25, 2001. *(R. at 83.)* In connection with her application, she alleged a disability since May 7, 1999, due

to emotional distress, panic attacks, headaches, difficulty breathing, insomnia, and fear. *(R. at 98.)* Plaintiff's application was denied at the initial and reconsideration levels. *(R. at 67, 68, 69-72.)*

The Administrative Law Judge (hereinafter "ALJ") conducted a hearing on September 17, 2002. *(R. at 31-66.)* Plaintiff was represented at the hearing by an attorney. *(R. at 31.)* On December 12, 2002, the ALJ issued his decision in which he made the following findings, *inter alia*, with regard to Plaintiff pursuant to the sequential analysis set forth in 20 C.F.R. § 404.1520: (1) claimant met the non-disability requirements for a period of disability and Disability Insurance Benefits and is insured for benefits through December 31, 2001; (2) claimant has not engaged in substantial gainful activity since the alleged onset of disability; (3) claimant has a combination of impairments considered "severe"; (4) these medically determinable impairments do not meet or medically equal one of the listed impairments; (5) claimant's allegations regarding her vocational limitations are not totally credible; (6) all medical opinions in the record were carefully considered regarding the severity of claimant's impairments; (7) claimant has no exertional limitations and is best suited to vocational environments which have low to moderate stress levels and do not require interaction with large groups of the general public; (8) claimant is unable to perform any of her past relevant work; (9) vocational expert testimony supports that there are a significant number of jobs in the regional and national economies that claimant could perform; (10) claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision. *(R. at 18-19.)*

After the ALJ issued his decision on December 12, 2002, Plaintiff filed a request for review. *(R. at 8-10.)* On April 4, 2003, the Appeals Council issued its decision denying Plaintiff's request for review *(R. at 4-6.),* making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed her complaint for court review of the ALJ's decision on May 9, 2003. *(Doc. 1)*

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th. Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Sec'y of Health & Human Services*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (further citation omitted)).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance.  *See, e.g., Sisco v. U.S. Dep't of Health & Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).

A claimant has the burden of proving his or her disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993); 42 U.S.C. § 423(d)(1)(A).  The Secretary has established a five-step process for evaluating a disability claim.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  At the first four levels of the sequential evaluation process, the claimant must show that she is not engaged in substantial gainful employment; she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. §§ 404.1520 and 416.920.  *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988).  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity (hereinafter "RFC"), age, education, prior work experience.  *See Gatson v. Bowen*, 838 F.2d 442, 446 (10th Cir. 1988).

### III. Plaintiff's Age, Education, Work Experience and Medical History

At the time of the hearing, Plaintiff was fifty-two years old. *(R. at 15, 35, 84.)* She completed high school and college, receiving a degree in hospitality. *(R. at 35, 104.)* During the fifteen-year period prior to the ALJ's decision, Plaintiff worked as an insurance coordinator, an accounting clerk, a telemarketer, and an insurance administrator. *(R. at 99, 112-116.)*

Plaintiff's medical records indicate she reported, during a visit to La Clinica de Familia, shortness of breath, chest tightness, heart palpitations, inability to sleep, tearfulness, and anxiety beginning in December, 1999. *(R. at 208.)* She reported numerous stressors, including her son's death in May, 1999, her sister's and daughter's illnesses, and pending college exams. *(Id.)* Nurse Katherine Weidenbach's impression was that Plaintiff was suffering from depression/anxiety and prescribed Zoloft[1] and Xanax[2] for Plaintiff. *(Id.)* In March, 2000, Plaintiff consulted Southwest Counseling Center, complaining of depression, anxiety and panic attacks. *(R. at 171.)* Therapist Katja Ohm-Mayfield indicated Plaintiff was experiencing an adjustment disorder with mixed anxiety and depressed mood due to bereavement, with a Global Assessment of Functioning[3] (hereinafter "GAF") score of 65. *(R. at 161-162.)* Plaintiff returned to the Southwest Counseling Center four more times, through May, 2000, and then was discharged for non-compliance in August, 2000. *(R.*

---

[1]Zoloft (sertraline) is in a class of drugs called selective serotonin reuptake inhibitors.  Sertraline affects chemicals in the brain that may become unbalanced and cause depression, panic or anxiety, obsessive or compulsive symptoms, or other psychiatric symptoms. Sertraline is used to treat depression, obsessive-compulsive disorder, panic disorder, posttraumatic stress disorder (PTSD), premenstrual dysphoric disorder (PMDD), and social anxiety disorder. *(Webmd).*

[2]Xanax (alprazolam) is in a class of drugs called benzodiazepines.  Alprozolam affects chemicals in the brain that may become unbalanced and cause anxiety.  Alprazolam is used to relieve anxiety, nervousness, tension associated with anxiety disorders, and to treat panic disorders. *(Webmd).*

[3]A GAF score is a measurement of the clinician's judgment of an individual's psychological, social, and occupational functioning. *(DSM-IV-TR at 32)*. A GAF score of 65 (61 to70) is indicative of "some mild symptoms or some difficulty in social, occupational, or school functioning but generally functioning pretty well, has some meaningful interpersonal relationships." *(Id. at 34)*

4

*at 161.)* Plaintiff's GAF score improved from 65 in March, 2000 to 70 in April, 2000. *(R. at 159, 162.)*

Plaintiff continued her consultations with La Clinica de Familia from December, 1999 through April, 2002. *(R. at 189, 190, 193, 194,199, 200, 203, 205, 208, 221.)* During this period, Plaintiff continued to report symptoms of depression and to request refills for Zoloft, Xanax, and Ativan.[4] *(Id.)* The health care providers at the clinic encouraged her to continue with grief counseling and her support group *(R. at 193, 200, 203.)*, while noting she "seems to be doing fairly well under the circumstances." *(R. at 200.)*

In December, 2001, Juan N. Sosa, Ph.D. conducted a brief, consultative mental status evaluation on Plaintiff. *(R. at 172-173.)* Dr. Sosa found Plaintiff's mood and affect depressed, but her speech and stream of thought clear and coherent. *(R. at 173.)* He reported Plaintiff complained of depression and noted Plaintiff had recent traumatic experiences supporting a diagnosis of traumatic stress disorder. *(Id.)* Dr. Sosa noted Plaintiff reported treatment with counseling and medications that appeared to have benefitted Plaintiff. *(Id.)* Plaintiff's diagnosis was Post Traumatic Stress Disorder with a GAF score of 50.[5] *(Id.)*

On January 18, 2002, at the time of the initial denial of benefits, a DDS[6] physician completed a Psychological Technique Review Form. *(R. at 174-187.)* This standard check-list form indicated that Plaintiff had a non-severe anxiety-related disorder, with recurrent and intrusive recollections of

---

[4]Ativan (lorazepam) is in a class of drugs called benzodiazepines. Lorazepam affects chemicals in the brain that may become unbalanced and cause anxiety, insomnia, and seizures. Lorazepam is used to relieve anxiety, nervousness, and tension associated with anxiety disorders. It is also used to treat certain types of seizure disorders and to relieve insomnia (induce sleep). *(Webmd).*

[5]A GAF score of 50 (41 to 50) is indicative of "serious symptoms or any serious impairment in social, occupational, or school functioning." *(DSM-IV-TR at 34.)*

[6]Disability Determination Services is the state agency with which the Social Security Administration has contracted to develop the medical record in Social Security claims at the initial and reconsideration levels. *See* 20 C.F.R. § 404.1519s.

a traumatic experience, which are a source of marked distress. *(R. at 174, 179.)* In the "B" criteria ratings of functional limitations, the physician found only mild limitations in activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. *(R. at 184.)* There were no repeated episodes of decompensation. *(Id.)* In addition to the check-list, the DDS physician included a narrative which states: "Ms. Valverde do [sic] admit to anxiety related to her son's murder. Her daily activities are intact, she is social and going to school. There is no evidence of thought disorder, severe cognitive limitation or substance abuse. Dx. PTSD." *(R. at 186.)*

### IV.  Discussion/Analysis

The ALJ denied Plaintiff benefits at step five of the five-part sequential analysis for determining disability, finding that Plaintiff has no exertional limitations, but is best suited to vocational environments which have low to moderate stress and do not require interaction with large groups of the general public. *(R. at 19.)* At step five, the burden of proof shifts to the Commissioner to show that Plaintiff is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *See Gatson*, 838 F.2d at 446.

Plaintiff alleges the ALJ made three errors in denying her claim for benefits because the decision is not supported by substantial evidence, the Commissioner failed to apply the correct legal standards, and the Commissioner failed to carry her burden of proof. *(Doc. 12.)* Specifically, Plaintiff argues that the ALJ: (1) made an erroneous credibility finding; (2) made an erroneous RFC finding because he failed to describe Plaintiff's non-exertional limitations adequately, mischaracterized her daily activities, and the effects of her impairment on her social functioning; and (3) erred by failing to identify Plaintiff's transferable skills and the specific occupations to which those skills are transferable. *(Doc. 12.)*

Defendant argues that the ALJ applied the correct legal standards and his decision that Plaintiff was not disabled is supported by substantial evidence. *(Doc. 13.)*

### A. Credibility Determination

Plaintiff argues that the ALJ erred in finding Plaintiff's allegations regarding her vocational limitations not credible. *(Doc. 12 at 14.)* The Court disagrees. In determining Plaintiff's RFC, the ALJ considered all of Plaintiff's symptoms and the extent to which Plaintiff's symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence in the record based on the requirements of 20 C.F.R.§§ 404.1529 and 416.929 (2003), and *Social Security Ruling 96-7p* (1996). *(R. at 16-17.)* In making his assessment of Plaintiff's credibility, the ALJ found that Plaintiff's "allegations regarding her vocational limitations are not totally credible." *(R. at 19.)*

In evaluating a claimant's subjective symptoms, an ALJ's findings on credibility "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). In this case, the ALJ's decision set forth specific reasons for his credibility determination which are supported by substantial evidence in the record.

The ALJ found that Plaintiff's allegations regarding her vocational limitations were not totally credible based on inconsistencies between her alleged limitations and the record indicating adequate functioning in both academic and social situations. *(R. at 16-17.)* The ALJ noted that

> "[d]ocumentary evidence indicates that she walks the mall, cooks, pays bills, does flower arrangements, and paints. I also find it very significant that at the expiration of her disability insured status Ms. Valverde was attending college and later finished her degree requirements under a Pell Grant. This is indicative of an ability to interact with others at a reasonable level and maintain concentration, persistence and pace. It is also indicative [of] an ability to engage in work related activities. Ms. Valverde has also reported that she socializes with her family, and support group. Her contentions regarding diminished capacity to focus does not reconcile with the successful completion of her academic pursuits. The state agency medical consultants

7

>   did not consider her impairments to be "severe."  I too assess only "mild" limitations in her activities of daily living, and ability to maintain concentration, persistence and pace."

*(R. at 17.)*

Credibility determinations are peculiarly the province of the fact finder and should not be upset when supported by substantial evidence.  *See Kepler*, 68 F.3d at 391.  The Court will not substitute its judgment for that of the Commissioner.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir.1991).  The ALJ relied upon appropriate factors to support his assessment of Plaintiff's credibility and he did not misrepresent testimony or other evidence regarding Plaintiff's subjective claims of vocational limitations.  The ALJ's finding that Plaintiff is not totally credible is supported by substantial evidence in the record.

### B.  RFC Determination

Plaintiff alleges the ALJ made an erroneous RFC finding because he failed to describe Plaintiff's non-exertional limitations adequately, mischaracterized her daily activities, and ignored the effects of her impairment on her social functioning.  *(Doc. 12 at 7.)*  Plaintiff does not challenge the ALJ's finding that she has no exertional impairments.  *(R. at17.)*  A residual functional capacity determination is what a claimant can still do despite her impairments, and is based upon all the relevant evidence including medical records, observations of physicians and others, and claimant's own descriptions of her limitations.  *See Andrade*, 985 F.2d at 1048.

When a claimant suffers from a severe mental impairment that is not severe enough to meet the requirements of a listed impairment at step three of the sequential analysis, the ALJ must assess the claimant's mental RFC.  20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). The Tenth Circuit has emphasized the importance of assessing a claimant's mental RFC under these circumstance.  "When the listing requirements for mental disorder are not met, but the impairment is nonetheless severe, [t]he determination of mental [residual functional capacity] is crucial to evaluation of an individual's

capacity to engage in substantial gainful work activity." *Cruse v. U.S. Dept of Health & Human Services*, 49 F.3d 614, 619 (10th Cir. 1995) (alterations in original) (internal quotations omitted). The assessment of a claimant's mental RFC "complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(A).

In this case, the ALJ discussed why he concluded Plaintiff did not meet the listing requirements for § 12.04, Affective Disorders, and § 12.06, Anxiety Related Disorders. *(R. at 16, 17.)* In doing so, he analyzed the "Part B" criteria of the listing, noting that Plaintiff's mental status presented no marked or extreme functional limitations, nor were any "Part C" criteria fulfilled. *(R. at 16.)* However, this analysis of the "Part B" criteria is not the equivalent of a mental RFC assessment. *Social Security Ruling 96-8p*, 1996 WL 374184 at \*4. The ALJ must assess a claimant's mental RFC in accordance with 20 C.F.R. §§ 404.1545(c) and 416.945(c) which require the ALJ to determine if the claimant has a limited ability to carry out certain mental activities in the workplace such as "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. §§ 404,1545(c); 416.945(c). The ALJ states that Plaintiff's ability to attend college and complete her degree requirements is indicative of an ability to interact with others at a reasonable level and maintain concentration, persistence and pace, and that it is also indicative of an ability to engage in work-related activities. *(R. at 17.)*

The ALJ also discussed how he analyzed the "Part B" criteria to determine if Plaintiff had a listed impairment and concluded she did not. *(R. at 16-17.)* He then discussed how Plaintiff's mental limitations affected her ability to do work-related activities, relying on the DDS medical consultants' Psychological Review Technique Form *(R. at 16-17, 174-187)*, and the intake assessment, psychiatric

9

evaluation, and progress notes from the Southwest Counseling Center *(R. at 16-17, 158-159).* The DDS consultants noted only mild limitations under the "B" criteria and none under the "C" criteria. *(R. at 184-185.)* During the intake assessment at Southwest Counseling Center in March, 2000, Plaintiff was rated as having no impairment in her daily living activities, social functioning, or thought processes and was assigned a GAF score of 65. *(R. at 16, 161-171.)* By April, 2000, Plaintiff was alert, oriented, with good memory, her thought processes were logical, coherent, goal-oriented and relevant, and her GAF was 70. *(R. at 16, 158-160.)* In August, 2000, Plaintiff was continuing in a support group and with individual counseling and was "doing fairly well under the circumstances." *(R. at 16, 200.)*

Plaintiff alleges the ALJ failed to properly consider the consultative examination conducted by Dr. Sosa and the GAF rating of 50 he assigned Plaintiff in December 2001. *(Doc. 12 at 10.)* The Court disagrees. The Tenth Circuit has held that the factors to be considered in evaluating a treating physician's opinions include the opinion's consistency with other evidence, the length of the treatment relationship, the frequency of examination and the extent to which the opinion is supported by objective medical evidence. *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001). The ALJ specifically noted Dr. Sosa's opinion was not given persuasive evidentiary weight because it was based on a one-time examination which rested heavily on Plaintiff's subjective statements. *(R. at 17.)* As stated above, the ALJ rejected Plaintiff's allegations regarding her vocational limitations as not totally credible because they were inconsistent with the objective evidence in the record. The ALJ also stated that Dr. Sosa's opinion was inconsistent with the other evidence in the record, specifically records from the Southwest Counseling Center, Plaintiff's daily activities, and her ability to complete a college degree. *(Id.)*

10

The ALJ properly concluded that Plaintiff had demonstrated the ability to function in an overall effective manner and retained the ability to engage in work related activities with limited restrictions. *(R. at 16, 17.)* The ALJ noted that

> [t]here is some evidence to suggest Ms. Valverde may be susceptible to stress and have difficulties in dealing with large groups of people. I therefore allow "moderate" limitations in social functioning. No extended periods of decompensation are documented and no section 12.04 or 12.06 "C" criteria are fulfilled. Ms. Valverde has no exertional limitations. She is best suited to work activities and vocational environments imposing low to moderate stress which do not require dealing with large numbers of the general public as a condition of employment."

*(R. at 17.)*

Plaintiff also alleges the ALJ's finding of "moderate" limitations in social functioning is not an accurate estimation of Plaintiff's abilities to interact with people, citing her alleged tendencies to withdraw from friends and family and her unsuccessful attempt at telemarketing. *(Doc. 12 at 10.)* However, the ALJ noted Plaintiff's own descriptions of her interactions with her support group (working on the newsletter and arranging meetings and barbecues at her home), her significant other, family and friends. *(R. at 17, 45-46.)* The ALJ also considered the fact that Plaintiff's "symptoms only seem to be exacerbated on the anniversaries" of her son's death and significant periods exist when Plaintiff does not see the need for medication. *(R. at 17, 193.)* The ALJ properly reviewed all the relevant evidence including medical records, observations of physicians and others, and claimant's own descriptions of her limitations, as required. *See Andrade*, 985 F.2d at 1048. The Court finds that the ALJ's RFC finding, that Plaintiff has no exertional limitations and is best suited to vocational environments with a low to moderate stress level that do not require interaction with large groups of the general public, is supported by substantial evidence.

### C. Identification of Transferable Skills

Finally, Plaintiff alleges the ALJ erred in his step five finding by failing to identify Plaintiff's transferable skills and the specific occupations to which those skills are transferable. *(Doc. 12 at 13)*

11

At step five, the burden of proof shifts to the Commissioner to show that Plaintiff is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *See Gatson*, 838 F.2d at 446. The ALJ can meet his burden of proof at step five in two ways: (1) by relying on a vocational expert's testimony; and/or (2) by relying on the "appendix two grids." *Taylor v. Callahan*, 969 F. Supp. 664, 669 (D. Kan. 1997). For example, expert vocational testimony might be used to demonstrate that the plaintiff can perform other jobs in the economy. *Id.* at 669-670. Non-exertional limitations can include mental impairments. The grids do not consider non-exertional limitations; therefore, if significant non-exertional limitations are present, the grids may not be applicable. *Id*. In this case, the ALJ used the testimony of a vocational expert in reaching his decision at step five of the analysis.

"Transferability," with regard to work skills, means "applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semi-skilled jobs." *Social Security Ruling 82-41*, 1982 WL 31389 at *2; *see also* 20 C.F.R. § 416.968(d). In assessing a claimant's transferable work skills, the ALJ must make specific findings in his written decision. *Dikeman v. Halter*, 245 F.3d 1182, 1185 (10th Cir. 2001). Mere conclusions that skills are transferable do not suffice. The ALJ's findings must identify the specific skills acquired by the claimant in his or her past work and the specific occupations to which the claimant's skills are transferable. *Dikeman* at 1185. The findings should be supported by "appropriate documentation" and job titles, by themselves, are not determinative of skill levels in deciding whether a claimant has transferable skills. *Dikeman* at 1185 (*citing Social Security Ruling 82-41*, 1982 WL 31389, at *4, *7).

In this case, the ALJ considered detailed job descriptions in the record of Plaintiff's past relevant work history. *(R. at 61, 99, 111-116, 145.)* Plaintiff stated she used machines, tools and equipment, that she used technical knowledge or skills, and wrote reports and completed forms. *(R.

12

*at 111-116.)* Specifically, Plaintiff described her duties as front desk customer service, answering telephones, receiving payments, tracking pending claims, preparing certificates of insurance, overlooking office when agents or manager away, data input, filing, mail, running balances, soliciting special rates, accounts payable duties, and coordinator for worker's compensation and liability for 149 retail tire stores for employees and customers. *(Id.)*

At the hearing, the ALJ called a vocational expert to testify about Plaintiff's past relevant work and her transferable skills. *(R. at 61-66.)* The VE stated Plaintiff could not return to her past relevant work given her age, education, past work history and the environmental limitations posed by the ALJ. *(R. at 62.)* When asked about transferable skills, the VE identified filing of physical data and duplicating (running off copies and forms and then filing them) as skills that Plaintiff retained from her past relevant work. *(R. at 62, 65.)* These transferable skills were derived from Plaintiff's past job of insurance administrator, Dictionary of Occupational Titles (hereinafter "DOT") Code 241.217-010, which is considered light, skilled work. *(R. at 65.)* The VE testified Plaintiff would be capable of vocational adjustment *(R. at 18.)* and identified two specific jobs Plaintiff could perform with these transferable skills: (1) File Clerk, DOT Code 206.367-014, which is "light" in exertional level and semi-skilled in nature, with 450 jobs regionally and 257,000 jobs nationally; and (2) Duplicator, DOT Code 207.682-014, which is "light" in exertional level and semi-skilled in nature, with 620 jobs regionally, and 162,000 nationally. *(R. at 62.)* When the ALJ asked if there were jobs of an unskilled nature Plaintiff could perform, the VE cited the following jobs: (1) Laundry Folder, DOT Code 361.587-010, which is "light" in exertional level and unskilled in nature, with 1,000 jobs regionally and 40,500 jobs nationally; and (2) Shipping and Receiving Clerk, DOT Code 222.387-074, which is "light" in exertional level and unskilled in nature, with 320 jobs regionally and 46,000 nationally. *(R. at 62-63.)*

Based on the above, the Court finds the ALJ did review the evidence and examine the vocational expert as to Plaintiff's transferable skills from past relevant work and the specific occupations to which the Plaintiff's skills are transferable. The Court finds the ALJ's opinion arguably could have been written with more detail and clarity, but a deficiency in opinion writing is not grounds for remand. *See Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.").

The Court agrees with the ALJ's decision that given Plaintiff's age, educational background, work experience, and residual functional capacity, she is capable of making a successful vocational adjustment to work that exists in significant numbers in the regional and national economies. The ALJ's finding is supported by substantial evidence in the record.

### V.  Conclusion

In conclusion, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record as a whole and comports with relevant legal standards. Accordingly, the Court **AFFIRMS** the decision of the Commissioner.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's Motion to Reverse and Remand For A Rehearing *(Doc. 11)* is **DENIED**. A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED**.

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**